UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

S. V.,

        Plaintiff,

  v.                                            Case No. 10-C-0919

KENNETH R. KRATZ,

        Defendant,
and

STATE OF WISCONSIN,

        Intervenor Defendant.

**DECISION AND ORDER GRANTING INTERVENOR-DEFENDANT STATE OF WISCONSIN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, S. V. filed this action for damages against Defendant Kenneth R. Kratz, the former District Attorney of Calumet County, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Kratz violated her constitutional rights when he repeatedly sent text messages to her over a three-day period following a meeting she had with him to discuss the prosecution of her former live-in partner for attempting to strangle and suffocate her. In the course of his text messaging, Kratz solicited a sexual relationship with Plaintiff. In an earlier decision denying Kratz's motion for summary judgment, the Court concluded that the facts may support a finding that Kratz subjected Plaintiff to sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 25.) The case is now before the Court on the motion of the State of Wisconsin for summary

judgment on its claim that the State has no duty to defend or indemnify Kratz pursuant to Section 895.46 of the Wisconsin Statutes. For the reasons set forth below, the State of Wisconsin's motion will be granted.

## BACKGROUND

As discussed in the Court's previous decision denying defendant Kratz's motion for summary judgment, the basic facts of this case are generally undisputed. Plaintiff S.V. lived in an abusive relationship with S. K., the father of her child, for years. (Intervenor-Def. Proposed Findings of Fact (IDPFOF) ¶ 1; Complaint ¶¶ 5, 7, 21.) In 2009, she reported to police that S. K. had beaten and strangled her, and on August 12, 2009, S. K. was charged in the Circuit Court for Calumet County with felony strangulation and suffocation under circumstances that constituted domestic abuse. (IDPFOF ¶ 1; Complaint ¶¶ 5, 7, 21.)

At the time, Kratz was the District Attorney of Calumet County. Kratz met with Plaintiff three times in October 2009 in connection with the case against S. K. During the first two meetings, the office's victim-witness coordinator was present. At the third meeting, which occurred on October 20, 2009, Kratz met alone with Plaintiff in a conference room at his office. (IDPFOF ¶ 3.) During the meeting, Kratz confirmed that he would be in charge of the prosecution, which Plaintiff understood to mean that she would be relying upon him directly for assistance regarding her participation in the process as the victim of the crime and the complaining witness in the prosecution.

At 3:45 p.m. on October 20, shortly after their meeting, Plaintiff received the first of some thirty text messages Kratz sent to her over the next 48 hours. The messages are set forth verbatim

2

in the Court's earlier decision and will not be repeated here. Suffice it to say that during the course of his text messaging, Kratz solicited a sexual relationship with Plaintiff. After Plaintiff stopped responding to his messages, Kratz sent a final message at 3:25 p.m., on October 22, 2009, just short of forty-eight hours after his first. It read: "When the case is over, if you change your mind and want to meet for a drink, please tell me. Otherwise I will respect your desire to be left alone."

At the time Kratz was sending his last message to Plaintiff, she was at a police department in an adjoining county with her mother, where she had gone to file a complaint. Even though she had not communicated the fact to Kratz, Plaintiff found his messages and solicitation unwelcome and offensive. She claims that she was upset and felt uncomfortable, injured and humiliated by his behavior. She also felt frightened, threatened, and intimidated by the pressure Kratz was placing on her. Plaintiff feared that if she confronted Kratz directly it would have an adverse effect on the prosecution of S. K. or would cause Kratz to retaliate against her in some other way. (IDPFOF ¶ 42.) Fearing that Kratz's position as District Attorney of Calumet County gave him authority over other law enforcement agencies within the County, she had decided to report his conduct to a law enforcement agency outside of the County. She also refused thereafter to have any further involvement with the prosecution of S. K. Eventually, she filed this action against Kratz seeking damages for violation of her civil rights under 42 U.S.C. § 1983.

The State of Wisconsin and its political subdivisions are required to indemnify public officers and employees for any judgment against them for damages and costs because of acts committed by them while carrying out their duties as an officer or employee if they are found to have been acting within the scope of their employment. Wis. Stat. § 895.46(1)(a) (2009-10). The State intervened in this action seeking a determination that it had no duty to indemnify Kratz for any

3

liability he may have to Plaintiff under this section because Kratz was acting outside the scope of his employment as the District Attorney of Calumet County when he engaged in the activities upon which Plaintiff's claim is based. The State now seeks summary judgment on the ground that based on the facts viewed most favorably to the non-movants, no reasonable jury could conclude otherwise. Kratz and Plaintiff oppose the State's motion.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

## ANALYSIS

The State of Wisconsin argues that Kratz is not entitled to indemnification pursuant to Wis. Stat. § 895.46 because he was acting outside the scope of his employment when he engaged in the alleged conduct. Under the indemnity statute, the government employer of a public officer or employee sued as a defendant for acts committed while carrying out duties as an officer or employee must pay any judgment entered against such defendant officer or employee if "the jury or the court finds that the defendant was acting within the scope of employment . . . " Wis. Stat. § 895.46(1)(a). In addition, the governmental employer is required to either provide a defense or pay the attorney's fees of an officer or employee who is sued for acts committed while carrying out his duties, regardless of the results of the litigation, "unless it is found by the court or jury that the defendant officer or employee did not act within the scope of employment." *Id.* The question presented here is whether Kratz is entitled to the benefit of this statute.

Under Wisconsin law, the issue of whether an employee acts within the scope of employment is generally presented to the jury because it entails factual questions regarding the employee's intent and purpose. *Stephenson v. Universal Metrics, Inc.*, 2001 WI App 173, ¶ 14, 247 Wis. 2d 349, 633 N.W.2d 707. Nevertheless, it may be proper to decide the scope of employment issue on a motion for summary judgment "as long as the underlying facts are not in dispute and reasonable inferences leading to conflicting results cannot be drawn from the undisputed facts." *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990) (citing *Cameron v. City of Milwaukee,* 102 Wis. 2d 448, 457-60, 307 N.W.2d 164, 169-70 (1981)*, Desotelle v. Continental Casualty Co.,* 136 Wis. 2d 13, 26-28, 400 N.W.2d 524, 529 (Wis. Ct. App. 1986))*.* As such, where there is no genuine issue of material fact, summary judgment may be proper even in

5

scope of employment cases. *Korntved v. Advanced Healthcare, S.C.*, 2005 WI App 197, ¶ 12, 286 Wis. 2d 499, 509-10, 704 N.W.2d 597, 603.

An employee acts within the scope of employment when "doing that which is warranted within the terms of his or her express or implied authority, considering the nature of the services required, the instructions which he or she has received, and the circumstances under which his or her work is being done or the services are being rendered." *Estate of Murray v. Travelers Ins. Co.*, 229 Wis.2d 819, 825, 601 N.W.2d 661, 663 (Wis. Ct. App. 1999) (quoting RESTATEMENT (SECOND) OF AGENCY § 228(2) (1957)). The inquiry thus involves both looking objectively at the employee's actions in light of their employment position, authority, and duties, and also considering the employee's subjective intent.

The subjective intent of the employee at the time the conduct occurred is a key factor. *Stephenson*, 2001 WI App at ¶ 10, 633 N.W.2d at 712 (citing *Olson v. Connerly*, 156 Wis. 2d 488, 497-501, 457 N.W.2d 479, 482-84 (1990)). An employee's conduct must have been at least partially actuated by an intent to serve the employer. *Carney v. White*, 843 F. Supp. 462, 479-80 (E.D. Wis. 1994) (citing *Olson,* 156 Wis. 2d at 499, 457 N.W.2d at 483). Yet, an intent to serve the employer "need not be the sole purpose of the employee's conduct, nor need it be even the primary purpose for the employee to be acting within the scope of the employment." *Stephenson,* 2001 WI App at ¶ 10, 633 N.W.2d at 712 (quotations omitted). Requiring that the employee's conduct be partially actuated by a purpose to serve the employer is consistent with the legislative intent behind § 895.46 to protect public officials who act in good faith while carrying out the functions of their job. *Olson*, 156 Wis. 2d at 500, 457 N.W.2d at 484 (citing *Schroeder v. Schoessow,* 108 Wis. 2d 49, 68, 321 N.W.2d 131,140 (1982)).

6

In contrast, an employee does not act within the scope of employment when the employee's conduct is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Olson*, 156 Wis. 2d at 498, 457 N.W.2d at 483. As such, where an employee "fully steps aside from conducting the employer's business to procure a predominantly personal benefit, the conduct falls outside the scope of employment." *Block v. Gomez*, 201 Wis. 2d 795, 806, 549 N.W.2d 783, 788 (Ct. App. 1996). Applying Wisconsin law, the Seventh Circuit has also explained that "an act is deemed to be within the scope of employment only if it is a natural, not disconnected and not extraordinary, part or incident of the service contemplated." *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990). *See also Doe v. St. Francis Sch. Dist.*, 834 F. Supp. 2d 889, (E.D. Wis. 2011) ("Employees act within the scope of employment when the act is fairly and reasonably connected to the natural purpose of the service contemplated.").

Where an employee knowingly violates express employer policies, civil or criminal laws, licensing regulations, or disciplinary codes in engaging in the conduct at issue, such evidence may be a powerful indication that the employee was acting outside the scope of employment. *See, e.g., Block*, 201 Wis. 2d at 807, 549 N.W.2d at 788. Yet, as a rule, employee conduct that is prohibited or even criminal does not necessarily fall outside the scope of employment. For example, other courts have examined whether a police officer's use of force or use of a weapon fell outside the scope of employment, and concluded it is a question of fact that a jury must decide. *See, e.g.*, *Cameron v. City of Milwaukee*, 102 Wis.2d 448, 307 N.W.2d 164, 169 (1981); *Javier v. City of Milwaukee*, 670 F3.d 823 (2012); *Jude v. City of Milwaukee*, No. 06C1101, 2010 WL 2643383 (E.D. Wis. 2010).

These cases are instructive because they highlight an important fact that is not present in cases such as this where the defendant officer or employee is sued for actions that are sexually motivated. The need to use force is an inherent part of a police officer's duties, and the line between when such use of force is justified, or privileged, and when it is unjustified and improper is not always clear or easy to draw. This is especially true when a law enforcement officer is required to immediately respond to a violent or potentially violent situation without the luxury of time to calmly and carefully consider the nature and extent of the risk he is facing. The need to use force under such circumstances is an essential part of a law enforcement officer's job, and frequently it will not be clear whether an officer's use of force was a result of over-zealous policing or whether he or she had actually "fully stepped aside" from their duties as an officer.

The same uncertainty does not exist where an employee engages in sexual misconduct. In such situations it is often easier to draw bright lines because there is no spectrum of acceptable behavior. For a prosecutor in Kratz's position, for example, soliciting a sexual relationship with a victim of a crime he is in the process of prosecuting is never a part of the job description. Thus, courts have often found as a matter of law that sexually motivated acts fall outside the scope of employment. *See, e.g., Block*, 201 Wis.2d at 806, 549 N.W.2d at 788 (finding a sexual relationship between a therapist and patient was not within scope of employment); *St. Francis*, 834 F. Supp. 2d at 901 (holding teacher's prohibited romantic relationship with a student was outside the scope of employment); *Doe v. Time Warner Cable of Se. Wisconsin, L.P.*, 07-C-781, 2007 WL 4143226, at *3 (E.D. Wis. Nov. 19, 2007) (denying application of respondeat superior doctrine where manager sexually assaulted a co-worker after walking her to her car on work property); *Meredith M. v. Pennsylvania General Ins. Co.*, Nos. 94-0059, 94-0096, 1994 WL 723794, at *4 (Wis. Ct. App.

8

Dec. 28, 1994) (finding employee acted outside the scope of employment when he sexually assaulted a client); *S.J.A.J. v. First Things First, Ltd.*, 2000 WI App 233, ¶ 23, 239 Wis. 2d 233, 619 N.W.2d 307 (holding counselor's actions in fostering a sexual relationship with a patient were beyond the scope of employment); *Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 612 (7th Cir. 2008) ("Indiana courts have found whether sexual misconduct is within the scope of one's employment to be a genuine issue of fact only in circumstances where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting.").

In *Doe v. St. Francis School District*, the court found that a sexual relationship between a teacher and a student fell outside the scope of employment. 834 F. Supp. 2d 889, 901 (E.D. Wis. 2011). The teacher argued that she developed a friendship with the student that grew out of their relationship as educator and student, and that her colleagues knew of the relationship. *Id.* The teacher argued these facts established that her relationship with the student was within the scope of her employment, even if the sexual contact with the student was improper—in effect, she argued that she believed she was serving her employer's interests but had gone too far. *Id.* The court disagreed, explaining that there were no facts alleged that indicated how the teacher's romantic relationship "served the educational mission" of her employer in any way. *Id.* In support of its decision, the court pointed to the teacher's knowledge that the relationship was expressly prohibited and the agreement between the teacher and student to keep their illicit relationship secret as additional evidence that the conduct fell outside the scope of employment. *Id.*

Similarly, in *Block*, the court considered whether a drug abuse counselor acted within the scope of his employment when he initiated a prohibited sexual relationship with a patient. 201 Wis.

9

2d 795, 807, 549 N.W.2d 783, 788 (Ct. App. 1996). In light of the fact that the employer had a written policy forbidding sexual relationships with patients, the court found that the defendant "undisputedly stepped aside from the [employer's] business to procure a purely personal benefit; that is, a sexual relationship with [the plaintiff]." *Id.* at 807. As a result, the court held that the defendant's actions, as a matter of law, fell outside the scope of his employment. *Id*.

This is not to say that the mere fact that a governmental officer or employee is accused of sexual misconduct removes him from the protection of the indemnification statute as a matter of law. If the acts alleged are unclear or can be reasonably viewed as furthering a purpose other than the employee's own sexual desires, summary judgment would be inappropriate. Here, however, there is no reasonable view of the facts that supports the assertion that Kratz's text message sexual solicitation of Plaintiff was "at least partially actuated by a purpose to serve [his] employer." While the Wisconsin indemnity statute offers broad protection for public employees, this case falls outside the bounds of the statute's reach. The text messages themselves are undisputed, and viewed in the most favorable light, the Court can see no rational connection between the messages that are at least arguably actionable and a good faith intent on Kratz's part to serve his employer's interests.

Kratz states in a declaration that one of his job duties as Calumet County District Attorney was to communicate personally with crime victims, including "maintaining continuing contact with [victims] regarding the prosecution." (Kratz Decl. ¶ 2, ECF No. 51.) Based on this statement, Plaintiff contends that Kratz's text messages were simply an improper method of carrying out an otherwise authorized incident of his job. Like the teacher in *St. Francis*, Plaintiff essentially argues that Kratz went "too far" in maintaining contact with Plaintiff. But Kratz has not been sued for

10

sending text messages to Plaintiff; it is his sexual solicitation of her that forms the basis of Plaintiff's action against him. While Kratz may have regularly communicated with crime victims regarding the prosecution of cases they were involved in, that was not the activity he undertook here. No reasonable jury could find that Kratz believed his continuous stream of text messages to Plaintiff culminating in his appeal – "I'm serious! I'm the atty. I have the $350,000 house. I have the 6-figure career. You may be the tall, young, hot nimph, but I am the prize! Start convincing" – was in service to the county he was elected to serve. While it is possible Kratz may have considered sending text messages to domestic violence crime victims a natural part of his duties, sending messages to procure a sexual relationship certainly was not employment-related.

Moreover, Kratz himself recognized that his conduct was not only outside the scope of his employment, but contrary to the spirit if not the letter of the ethical obligations by which he was bound as a licensed attorney practicing in the state of Wisconsin. The plain language of the text messages document Kratz's awareness that his actions were improper. He stated: "Its [sic] maybe not the wisest thing I can do, but you are awfully sweet. Just don't tell anyone, ok?" and "I know this is wrong." He also asked Plaintiff: "Are you the kind of girl that likes secret contact with an older married elected DA . . . the riskier the better? Or do you want to stop right know [sic] before any issues?" Other messages stated: "[y]es you are a risk taker and can keep your mouth shut and you think this is fun . . . or you think a man twice your age is creepy so stop" and "[r]emember it would have to be special enough to risk all." These messages contradict Kratz's self-serving declaration that he was intending to serve his employer's interest and to "enhance the plaintiff's confidence in me as a competent prosecutor" despite the fact that some of the text messages were "not an appropriate way to compliment the plaintiff or build her self-esteem." *See First Commodity*

11

*Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) (holding that conclusory statements unsupported by specific facts are not sufficient to raise a genuine issue of material fact). Rather, the messages transparently seek a sexual relationship with Plaintiff, and do not relate to any conceivable prosecution function. Wisconsin has no public interest in shielding its officers and employees from personal liability for this type of conduct. Indeed, doing so would reduce the incentive the State's officers and employees should have to avoid such conduct.

Kratz also contends, and Plaintiff argues, that Kratz's text communications were sent using contact information properly obtained from Plaintiff while performing his duties as prosecutor in her case. However, it is irrelevant that the opportunity to communicate with her via text arose as a result of his position as prosecutor. Even if Kratz obtained Plaintiff's contact information and began the conversation with work-related purposes in mind, the offending messages can only be viewed as actions Kratz took after he had "stepped aside" from any employment purpose. His text messages support this conclusion. For example, in addition to the message quoted above, he also wrote: "I would want you to be so hot and treat me so well that you'd be THE woman!" Such messages can only be interpreted to indicate that Kratz's goal was to procure a sexual relationship with Plaintiff–a purely personal benefit that was wholly disconnected from, and indeed contrary to, his regular duties. *See Block*, 201 Wis. 2d at ¶ 10.

Plaintiff also argues that because the text messages were all sent within normal working hours, Kratz's conduct was not "far beyond the authorized space or time limits" and therefore not outside the scope of employment. However, the fact that the messages were sent during business hours does little to tie the conduct to work. If so little were required, then virtually any sexual harassment, or even an assault, might fall within the scope of employment so long as it occurred on

12

the employer's property or during work hours. This Court has also explained that an employee does not act within the scope of employment simply because the conduct occurred while the employee was at work–the employee's purpose at the time of the conduct is what matters. *Doe v. Time Warner Cable of Se. Wisconsin, L.P.*, 07-C-781, 2007 WL 4143226, *3 (E.D. Wis. Nov. 19, 2007) ("The question is what the defendant's intent was at the time he committed the tort, not what the overall context was.").

In sum, Wis. Stat § 895.46 protects employees acting within the scope of their employment, but the statute was not intended to protect employees who intentionally disregard employer policies and rules to seek a purely personal benefit. Kratz's text communications with Plaintiff were different in kind from victim communications authorized for a prosecutor, and his solicitations were too little actuated by a purpose to serve any legitimate prosecutorial function. No evidence has been presented indicating that Kratz was explicitly or impliedly authorized to engage in private messaging with a crime victim to procure a romantic relationship. To the contrary, his communications knowingly violated employer policies and ethical guidelines. Accordingly, no rational trier of fact could conclude that Kratz was acting within the scope of his employment, and therefore, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**CONCLUSION**

For the foregoing reasons, Kratz is not entitled to indemnity pursuant to Wis. Stat. § 895.46, as he was not acting within the scope of his employment when he engaged in the activities alleged

in this lawsuit. Therefore, the State of Wisconsin's motion for summary judgment (ECF No. 29) is **GRANTED**.

Dated this   15th   day of November, 2012.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court